

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-2-2008

# Dade v. DiGuglielmo

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3024

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Dade v. DiGuglielmo" (2008). *2008 Decisions.* Paper 923.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/923

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-3024

KENNETH ANDRE DADE,
Appellant


v.


DAVID DIGUGLIELMO; THE DISTRICT ATTORNEY OF THE COUNTY OF
ALLEGHENY;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 04-CV-1343
District Judge: The Honorable Gary L. Lancaster

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 22, 2008

Before: SMITH, FISHER, and NYGAARD, *Circuit Judges*

(Filed: July 2, 2008)

OPINION

SMITH, *Circuit Judge*.

Kenneth Andre Dade sustained a gunshot wound to his neck and cheek on June 12,

1

1997.  He was hospitalized briefly and discharged with instructions to administer an antibiotic, the narcotic analgesic Roxicet and the medication Neurontin as needed for pain.  On June 19, four days after his discharge from the hospital, police from the Pittsburgh Police Department requested permission to question Dade about his injury.  He consented, and rode with the officers to the station after arranging for his father to care for his young son.  During the questioning, Dade implicated himself in a drive-by-shooting that occurred on the same night that he sustained his injuries.  After the officers read Dade his *Miranda* rights, Dade revealed the full extent of his involvement.

Subsequently, he was charged with, *inter alia*, murder in the third degree.  Dade moved to suppress his confession, arguing that it was involuntary on several grounds, including the fact that he was "under the influence of medication at the time of the statement[.]" At the suppression hearing, Dade declined to testify.  As a result, the trial court had no evidence as to whether Dade had taken any of the medications on the day he confessed, and if so, the time the specific medication(s) were administered.  In light of the evidence regarding the circumstances surrounding Dade's confession, the trial court concluded that his confession was knowing and voluntary and denied the motion to suppress.  A jury convicted Dade of murder in the third degree, as well as several other offenses.

Dade appealed, contending that the trial court erred by denying his suppression motion because his statements were not voluntary.  The Pennsylvania Superior Court was

not persuaded. The Pennsylvania Supreme Court denied his petition for allowance of appeal. Thereafter, Dade filed a timely petition under the Pennsylvania Post Conviction Relief Act (PCRA), 42 PA. CONS. STAT. §§ 9541-9546. With the assistance of counsel, Dade filed a Second Amended PCRA Petition, alleging that his confession was involuntary because he was under the influence of prescription drugs at the time of his statement. He also alleged that his trial and appellate counsel were ineffective because they did not develop the issue of his diminished capacity.

The trial court denied Dade's PCRA petition on the basis that the Pennsylvania Superior Court had affirmed its determination that the confession was voluntary. Dade appealed, arguing that trial counsel was ineffective because he did not "present expert testimony from a doctor or toxicologist who could have testified to" the effects of the medications he had been prescribed. The Superior Court affirmed the trial court's denial of Dade's PCRA petition. It recited the fact that Dade was claiming that both trial and appellate counsel were ineffective because they failed to develop his diminished capacity argument. The Superior Court reasoned, however, that this issue was simply a new theory relitigating the voluntariness of his confession. The Pennsylvania Supreme Court denied Dade's petition for allowance of appeal.

Thereafter, Dade filed a timely 28 U.S.C. § 2254 petition in the District Court for the Western District of Pennsylvania. Dade asserted that his conviction should be set aside because his confession was involuntary and his trial counsel had been ineffective by

failing to present expert testimony regarding his mental state at the time of his confession. An amended § 2254 petition appended an affidavit from Dr. Lawson Bernstein, a neuropsychiatrist. Dr. Bernstein affirmed that he had reviewed Dade's discharge summary from the hospital four days before he confessed, the various trial transcripts, and the confession. Dr. Bernstein opined that Dade "lacked the cognitive capacity to make a knowing and voluntary waiver of his rights and to assent to interrogation on the date of his taped confession."

The District Court adopted the report and recommendation of the Magistrate Judge denying the § 2254 petition. Dade appealed. We granted a certificate of appealability on the issue of whether Dade "exhausted in state court his claim that trial counsel had rendered ineffective assistance by failing to present expert medical testimony or otherwise support his argument that his waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), had not been knowing and intelligent as a result of medication . . ." and whether Dade was entitled to relief on his ineffectiveness claim. For the reasons set forth below, we will affirm.[1]

## I.

The Magistrate Judge's report and recommendation appropriately recited that § 2254(b)(1)(A) requires that the habeas petitioner exhaust his state court remedies. Yet

---

[1]The District Court exercised jurisdiction pursuant to 28 U.S.C. § 2254(a). Appellate jurisdiction exists under 28 U.S.C. §§ 1291 and 2253.

the Magistrate Judge failed to determine whether Dade had in fact exhausted his claims, stating that "[i]t appears that Petitioner has presented the majority of his claims to the trial court through his direct appeal." Dade asserts that he did exhaust his state court remedies. The Commonwealth disputes this. It argues that the claim asserted in the District Court, that trial counsel was ineffective because he did not present expert testimony from Dr. Bernstein that Dade lacked the cognitive capacity to make a knowing and voluntary confession, was not fairly presented to the state court.[2]

In *Picard v. Connor*, 404 U.S. 270 (1971), the Supreme Court instructed that if the "federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Id.* at 275. The Court explained that

> it is not sufficient merely that the federal habeas applicant has been through the state courts. . . . Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.

*Id.* at 275-76. In *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999), we instructed that this requires a habeas petition to "present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." In other words, the claims raised in the state courts must be substantially equivalent to the claim pressed in the federal court. *Doctor v. Walters*, 96 F.3d 675, 678

---

[2]The question of whether a habeas petitioner has exhausted his state court remedies is subject to plenary review. *Ellison v. Rogers*, 484 F.3d 658, 660 (3d Cir. 2007).

5

(3d Cir. 1996).

We conclude that Dade's state ineffectiveness claim was substantially equivalent to the claim pressed in the District Court. In the state proceeding, Dade argued that his trial and appellate counsel were inadequate because they failed to develop his claim that his diminished capacity rendered his confession involuntary, and specifically cited the fact that expert medical testimony should have been adduced to describe the effects of his prescribed medications on his mental capacity. That very same claim is present in Dade's amended § 2254 petition. To be sure, Dr. Bernstein was not mentioned in the state court proceedings. But we do not find that to be a difference with significance because the heart of Dade's federal ineffectiveness claim was that expert medical testimony should have been obtained to aid the trial court in evaluating Dade's cognitive ability to make a knowing and voluntary confession. The identity of the expert does not alter that claim. Instead, it simply provided additional support for Dade's position that expert testimony would have been beneficial to the trial court when it was deciding whether to grant his motion to suppress. *See Vasquez v. Hillery*, 474 U.S. 254, 260 (1986) (holding that supplemental evidence presented by prisoner "did not fundamentally alter the legal claim already considered by the state courts"); *Stevens v. Del. Corr. Ctr.*, 295 F.3d 361, 370 (3d Cir. 2002) (citing *Vasquez*, and concluding that claim was exhausted because the affidavits filed in federal court, which contained more facts than the submissions filed in state court, did not fundamentally alter the legal claim). Thus, we conclude that Dade

6

exhausted his state court remedies on this claim.

## II.

Dade asserts that we should vacate the judgment of the District Court and remand for an evidentiary hearing on his ineffectiveness claim. Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner asserting a claim that his counsel was ineffective must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced his defense. *Id.* at 687. Even if we assume that counsel unreasonably failed to develop the diminished capacity claim by obtaining expert testimony, we conclude that the deficient performance was not prejudicial because the expert testimony of Dr. Bernstein was unlikely to advance Dade's claim of ineffectiveness as it lacked a factual foundation. Dr. Bernstein never spoke with Dade and there was no evidence that Dade either had his prescriptions filled, or that he even consumed the medications as prescribed, particularly the Roxicet, at any time after his discharge from the hospital. Without some evidence in this regard, Dr. Bernstein's opinion was based on pure speculation and was unlikely to suggest that Dade suffered from a diminished capacity at the time of his confession. As a consequence, the alleged ineffectiveness of counsel in failing to obtain expert testimony did not prejudice Dade's defense.

Nonetheless, Dade asserts that we should vacate the District Court's judgment and remand for an evidentiary hearing. In *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir.

7

2000), we observed that when a factual record is incomplete because of the state's action, a district court has discretion to grant an evidentiary hearing. In exercising that discretion, a court should "focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Id.*

We find no abuse of discretion by the District Court in declining Dade's request for an evidentiary hearing on his ineffectiveness claim. We recognize that Dade's testimony was not the only means by which counsel could have demonstrated that Dade might have consumed the prescribed medications before he accompanied the officers to the station. But Dade has failed to "forecast" that there is any evidence which would support this pivotal fact if an evidentiary hearing were granted. *Campbell*, 209 F.3d at 287. Dade has not identified the pharmacy that filled the prescriptions, or whether the quantity prescribed contemplated that Dade would still be taking the narcotic analgesic a week after the injury. Nor has Dade proffered any evidence from his girlfriend, with whom he was living at that time, that she observed the medication bottles were in their house, or that Dade had ever consumed any of the medication following his discharge. Without some evidence to suggest that a hearing might have the potential for advancing Dade's claim that his cognitive functioning was impaired because he consumed the medication, particularly the narcotic analgesic, on the day he was interrogated at the station, we conclude that the District Court did not err by failing to conduct an evidentiary

hearing.

We will affirm the judgment of the District Court.